UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIV. ACTION NO. 4:07-cv-01760 |
| AMERICAN HOME ASSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff Amerisure Mutual Insurance Company's ("Amerisure") Motion for Leave to Amend Complaint. (Doc. No. 43). The Motion seeks to add a claim to recoup settlement payments in a separate state court action: Plaintiff's claim would be based on an indemnity contract between Plaintiff's insured, Hou-Tra International, Inc. ("Hou-Tra"), and Defendant American Home Assurance Company's ("American Home") insured, Calpine Corporation ("Calpine"); the claim would be brought by Plaintiff via subrogation, and against Defendant directly. Having considered the Motion, the responses and replies thereto, oral argument offered at a hearing on June 16, 2008, and all applicable law, the Court finds that the Motion should be denied.

### I. BACKGROUND

This case arises out of a wrongful death suit in Texas state court that has already settled. *Chun Addison, et al. v. Calpine Corporation, et al.*, No. 50192 (127th Dist. Ct.,

Harris County, Tex. 2004). The facts of the underlying lawsuit are familiar to the parties and need not be recited here. The settlement in that case involved no admissions of liability, and each insurer paid money to secure the release of its own insured, *e.g.*, Amerisure paid for Hou-Tra's release, and American Home paid for Calpine's. The claims asserted between the insureds, which included Calpine's third party action against Hou-Tra but did not include a contractual indemnity claim by Hou-Tra against Calpine or American Home, were dismissed without prejudice by agreement of the parties.

Before the state court case settled, Amerisure filed this declaratory judgment action seeking to determine the parties' respective insurance obligations with respect to any potential liabilities arising out of the state court action. Now that the case has settled, Amerisure seeks to amend its complaint to assert a claim to recoup its settlement payments. Specifically, Amerisure seeks to assert a claim directly against American Home for the settlement payments, relying on an indemnity agreement that its insured, Hou-Tra, made with American Home's insured, Calpine. To bring this claim, Amerisure depends on two procedural mechanisms: first, it intends to stand in Hou-Tra's shoes via subrogation; second, it intends to sue American Home directly rather than first suing Calpine. The parties strongly disagree about the propriety of the second step in particular. American Home argues that it is a "direct action" against an insurer, which it believes is prohibited in Texas. In contrast, Amerisure believes that American Home has issued "insured contract" coverage for Calpine's indemnity agreement with Hou-Tra, and by virtue of this coverage, Amerisure believes that American Home stands squarely in the shoes of Calpine for purposes of the indemnity agreement.

The parties disagree equally strongly about the propriety of Amerisure bringing its indemnity claim after settlement. American Home believes that Texas law prohibits post-settlement litigation of liability for the purpose of interpreting an indemnity contract. Amerisure argues the opposite, and also argues that the claim should be allowed for a variety of equitable reasons, including a purported agreement between counsel to litigate liability in this federal case.

## II.   ANALYSIS

The Court will address the latter dispute first—whether Amerisure is entitled to litigate the question of liability after settlement for the purpose of interpreting the indemnity agreement between the insureds, Hou-Tra and Calpine. For the reasons that follow, the Court finds that Amerisure is not so entitled. Because this finding mandates denial of Amerisure's Motion, the Court need not reach the procedural questions relating to Amerisure's attempt to sue American Home directly rather than first suing Calpine.

Although Federal Rules of Civil Procedure 15 dictates that "[t]he court should freely give leave [to amend] when justice so requires," two Texas cases control the Court's analysis in denying leave: *Fisk Electric Co. v. Constructors & Assocs.*, 888 S.W.2d 813, 815 (Tex. 1994), and *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.*, --- S.W.3d ---, 2007 WL 2130373 (Tex. App.—Houston [1st Dist.] July 26, 2007, no pet.). In *Fisk*, Constructors & Associates ("Constructors"), the indemnitee, entered into a contract with Fisk Electric Company ("Fisk"), the indemnitor, that included an indemnity clause covering damages and costs relating to claims arising out of or resulting from the performance of Fisk's work. 888 S.W.2d at 814. It was undisputed that the

indemnity clause did not meet the requirements of the express negligence test, which states that "[p]arties seeking to indemnify themselves for their own negligence must express that intent in specific terms," and therefore "indemnity provisions that do not clearly provide for indemnification for the indemnitee's own negligence do not, as a matter of law, indemnify the indemnitee for its own negligence." *Id.* at 814-15 (*citing Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987)). When an employee of Fisk was injured on the job site and brought a negligence action against Constructors, Constructors in turn brought a third party cause of action against Fisk seeking indemnification. *Id.* The question raised in the Texas Supreme Court was "whether an indemnitor . . . must pay attorney's fees and other expenses incurred by an indemnitee . . . when the indemnitee is accused of negligence, but not found to be negligent, and the indemnity agreement does not meet the express negligence test." *Id.* at 813.

The Supreme Court answered this question plainly, stating, "We hold that no obligation to indemnify an indemnitee for the costs or expenses resulting from a claim made against it for its own negligence arises unless the indemnification agreement complies with the express negligence test." *Id.* at 813-14. Importantly for the instant case, the Supreme Court offered a clear statement off the rationale underlying its holding, explaining that to hold otherwise "regarding defense expenses would leave indemnitors liable for a cost resulting from a claim of negligence which they did not agree to bear. Significantly, it would also leave indemnitors vulnerable to indemnitees who might settle cases without admitting negligence, leaving the indemnitor to pay the costs of settlement and defense." *Id.* at 815. In a footnote, the Supreme Court, again citing *Ethyl*, added that

its holding was further intended to "advance[] the policy of preventing satellite litigation regarding interpretation of indemnity contracts." *Id.* at 815 n.2; *see also Ethyl*, 725 S.W.2d at 708 (complaining of the "a plethora of law suits to construe . . . ambiguous [indemnity] contracts," and declaring that "the better policy is to cut through the ambiguity of those provisions and adopt the express negligence doctrine.").

Of course, the actual dispute between Constructors and Fisk dealt only with defense costs, whereas the dispute in the instant case involves settlement monies paid by Amerisure to secure a release of claims against its insured, Hou-Tra. Therefore, while *Fisk* is instructive on the question before the Court, it is not precisely on all fours with the instant case; were *Fisk* the only relevant authority available, the Court would have to make an *Erie* guess as to whether it controls. However, *Fisk*'s rationale has recently been applied in a case that is identical in all relevant respects to the case at bar. In *Gilbane Building Co. v. Keystone Structural Concrete, Ltd.*, the Texas Court of Appeals confronted the question of whether a general contractor and its liability insurer could bring an indemnity action against a subcontractor and its excess liability insurer to recover payments made to settle a claim by the subcontractor's injured employee. 2007 WL 2130373 (Tex. App.—Houston [1st Dist.] July 26, 2007, no pet.). As was the case in *Fisk*, the "four corners" of the indemnity agreement between the contractor and subcontractor in *Gilbane* did not meet the express negligence test, that is, it did not expressly indemnify the contractor for its own negligence. *Id.* at *3. The Court of Appeals therefore turned to *Fisk*, specifically noting the language in *Fisk* that expressed concern about "'leav[ing] indemnitors liable for a cost resulting from a claim of negligence which they did not agree to bear'" and "'leav[ing] indemnitors vulnerable to

indemnitees who might settle cases without admitting negligence, leaving the indemnitor to pay the costs of settlement and defense.'" *Id.* at *4 (*quoting Fisk*, 888 S.W.2d at 815). The Court of Appeals concluded,

> As the Texas Supreme Court foreshadowed [in *Fisk*, the indemnitee] seeks to have [the indemnitor] pay for its settlement. To allow [the indemnitee] to litigate the question of who caused [the underlying plaintiff's] injuries post-settlement and without a valid indemnity agreement retards rather than advances the policy of preventing satellite litigation regarding interpretation of indemnity contracts. Because the [indemnity] contract does not contain a valid indemnity agreement applicable to this case, we hold that the trial court properly granted summary judgment on [the indemnitee's] contractual indemnity claim.

*Id.* at *5 (*citing Fisk*, 888 S.W.2d. at 815 & n.2) (internal quotations omitted).

In the instant case, it is undisputed that, as in *Gilbane*, Amerisure, acting through subrogation as indemnitee, seeks to have American Home pay, as indemnitor, for its settlement of the underlying suit. It is also undisputed that, as in both *Fisk* and *Gilbane*, the indemnity clause Amerisure relies on in the contract between Hou-Tra and Calpine fails the express negligence test. (*See, e.g.,* Pl.'s Br., Doc. No. 50, at 7, stating "[I]n our indemnification, no one was indemnified against their own negligence."). Therefore, just as in *Gilbane* and *Fisk*, the Court finds that allowing Amerisure to litigate the question of whose negligence caused the accident that gave rise to the underlying lawsuit post-settlement, and without an indemnity agreement that meets the express negligence test, would expose American Home to the risk of having to pay for a settlement to which they

did not agree, and would require precisely the kind of satellite litigation disapproved of in Texas.[1]

## III.   CONCLUSION

For the reasons offered above, Amerisure's Motion for Leave to Amend Complaint (Doc. No. 43) is **DENIED**. Consequently, it is further **ORDERED** that Amerisure's Second Amended Complaint (Doc. No. 44) be **STRICKEN** from the record, and that Amerisure's Motion for Partial Summary Judgment (Doc. No. 45), which requests summary judgment on claims advanced exclusively in the Second Amended Complaint, also be **STRICKEN** from the record.

**IT IS SO ORDERED.**

---

[1] None of Amerisure's arguments to the contrary is persuasive. Its contention that the express negligence test does not apply (Pl's Br., Doc. No. 50, at 6-7), and its argument that public policy favors enforcement of contracts even if this means post-settlement litigation, are refuted by the cases cited above. Similarly misplaced is Amerisure's reliance on *Tesoro Petroleum Corp. v. Neighbors Drilling USA, Inc.*, 106 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2003, pet. denied), for the proposition that *Fisk* is inapplicable to a claim for indemnification for a settlement payment. (Pl.'s Br., Doc. No. 52, at 3.) Unlike the indemnity provision in this case, *Tesoro* involved an indemnity agreement that covered the indemnitee for its own negligence, albeit not for the indemnitee's gross negligence, and is therefore distinguishable from the instant case. *Tesoro*, 106 S.W.3d at 125. Perhaps more importantly, however, the indemnitor in the *Tesoro* case "participated in the settlement and stipulated to its reasonableness," *id.* at 125 n.4, thereby eliminating the concern expressed in *Fisk* (and later in *Gilbane*) that an indemnitor would have to pay settlement costs to which it did not agree. Finally, Amerisure's reliance on an August, 2007 agreement between the parties to this lawsuit that purportedly expresses those parties' intent to litigate this indemnity claim in federal court is misplaced. It is true that the agreement in question contains broad language, most notably, "It is the intention of all parties to this agreement that all rights and duties and other matters pertaining to the Liberty Mutual policy, the Amerisure policy, and the American Home policy will be resolved in the Federal Court Litigation rather than in the State Court Litigation." (Pl.'s Br., Doc. No. 52, Ex. A, at 2-3.) Yet that letter does not mention the indemnity agreement between Hou-Tra and Calpine, it does not mention the word "indemnity," and Hou-Tra is not a party to the agreement. Moreover, while the chronology of events is not entirely clear from the record, the language in the agreement referring to future mediation suggests that the agreement was reached before the state court lawsuit was settled. *Gilbane* had been decided just a few days prior to that agreement and may not yet have come to the attention of counsel for Amerisure, but *Fisk*, which included the above-cited language purporting to extend its holding to cover both defense and settlement costs and thereby notified prudent litigants that they must pursue any indemnity claim before settling, had been good law for nearly thirteen years. Given the ambiguity in the contract and the state of the law at the time the parties reached their agreement, the Court cannot conclude that today's decision controverts the parties' expressed intent or works any inequitable result not already contemplated by Texas law.

**SIGNED** at Houston, Texas, on this the ____ day of August, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.